## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

In re                                                  Chapter 11

First Foliage, L.C.,

                                                       Case No. 10-27532-LMI-BKC

     Debtor.

_____/

## COSTA FARMS, LLC'S EMERGENCY MOTION TO COMPEL DEBTOR TO COMPLY WITH BIDDING PROCEDURES ORDER AND ALLOW COSTA FARMS, LLC TO PARTICIPATE IN THE BIDDING PROCESS AND AUCTION

### Basis for Emergency Relief

Costa Farms, LLC respectfully requests a hearing in this matter no later than the end of the day on Friday, January 28, 2011. This matter is directly related to an auction scheduled to take place on February 7, 2011. It is imperative that Costa Farms, LLC be authorized to perform an inspection of the Debtor's assets by no later than Sunday, January 30, 2011, which is only five business days prior to the auction. In the absence of the relief requested herein, Costa Farms, LLC will not have adequate time to inspect the Debtor's assets, analyze the results, and be in a position to increase its bid at the auction. As discussed in this Motion, Costa Farms, LLC has made a bona fide effort to resolve the issues raised in the Motion as required by Local Rule 9075-1(B).

Costa Farms, LLC ("Costa"), by and through its undersigned counsel, files this Emergency Motion to Compel Debtor to Comply with Bidding Procedures and Allow Costa Farms, LLC to Participate in the Bidding Process and Auction (the "Motion"). In support of the Motion, Costa states as follows:

### Preliminary Statement

Costa is a leader in the indoor houseplant and bedding plant industry, and its business significantly overlaps with that of the Debtor. As such, the Debtor's assets and locations are strategically important to Costa – merging the two businesses together offers meaningful

synergistic opportunities and value.  Accordingly, after learning of the Court's entry of an Order Authorizing and Approving Bidding Procedures for the Sale of Substantially All the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances (the "Bidding Procedures Order") (ECF # 224),[1] Costa immediately prepared, and on January 25, 2011, submitted to First Foliage, L.C. (the "Debtor") a bid in the amount of $15,687,000 for the purchase of the Debtor's assets (the "Costa Bid").

The Costa Bid is on terms and conditions substantially similar to the Debtor as those contained in the bid (the "BFN Bid") of the stalking horse, BFN Foliage LLC ("BFN"), but provides **$1.3 million** in additional consideration (i.e., **$900,000** more than the Proposed Consideration required under the Bidding Procedures) and **doubles** the recovery for unsecured trade creditors from $500,000 to $1,000,000.   Further, the Costa Bid is not conditioned on the ability of Costa to obtain financing or the outcome of unperformed diligence by Costa or any contingency not otherwise provided for in the BFN Bid.[2]   Finally, Costa has already demonstrated its financial wherewithal and ability to consummate the Costa Bid to the Debtor and has pledged not to contact any employees, vendors or customers of the Debtor in connection with the bidding and auction process.

To date, however, the Debtor has refused to accept the Costa Bid, notwithstanding the fact that the Costa Bid fully complies with the Bidding Procedures and, given the strength of

---

[1]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Bidding Procedures Order and Exhibit A containing the Bidding Procedures.

[2]    Section 7.2(f) of the Competing Agreement states, as a condition to closing, that "the Buyer shall have completed its due diligence review of the Seller, the Purchased Assets and the Business and be satisfied with the results thereof in its sole discretion; provided that this condition to closing shall be deemed to be satisfied and waived unless the Buyer shall have notified the Seller in writing not later than February 3, 2011 that it is terminating this Agreement pursuant to Section 8.1(b)(x)." This provision is a holdover from the language in BFN's Agreement, which, given the exigencies of the situation, was inadvertently left in Costa's Competing Agreement.  Costa has represented to the Debtor that it will strike such condition in its Competing Agreement.  Accordingly, the copy of the Competing Agreement attached hereto as Exhibit "C" has been hand marked to strike Section 7.2(f).

Costa's business and potential synergies with the Debtor, provides the best opportunity for the Debtor to maximize the value of its estate and ensure the prospective viability of its business. Further, the Debtor has refused to provide Costa with the due diligence materials in the Debtor's virtual data room and the right to inspect the Debtor's assets so that Costa can participate in the Auction and potentially increase its bid. The historic bad blood described below between the Debtor and Costa has undoubtedly plagued Costa's efforts to participate in the auction process and, as discussed below, it would appear that the Debtor's management and principals have undisclosed conflicts of interest that compromise their ability to act as unbiased fiduciaries.

As a consequence of the Debtor's actions, Costa requests an emergency hearing on the Motion to compel the Debtor (i) to comply with the Bidding Procedures Order and allow Costa to participate as a Qualifed Bidder in the bidding process and Auction, (ii) to allow Costa access to the due diligence materials in the Debtor's virtual data room and the right to inspect the Debtor's assets so that Costa can participate in the Auction and potentially increase its bid, and (iii) to disclose all conflicts of interest of the Debtor's management and principals. Given the clear economic enhancement of the Costa Bid to the Debtor, its estate and creditors, the Debtor's actions have cast serious doubts on the integrity of the bidding process and this Court's Bidding Procedures Order. Time is of the essence since the Auction is scheduled to occur on February 7, 2011. Without such relief, the auction process will have been chilled by the unwarranted exclusion of the Costa Bid, which is well in excess of the BFN Bid.

## BACKGROUND

### Costa Farms, LLC is an Industry Leader

Costa is a leader in the indoor houseplant and bedding plant industry, and has been in the agricultural business for over 40 years. Its business stretches globally over 3,500 acres and

employs 2,800 people. It has indoor houseplant and bedding plant divisions with operations domestically in South Florida and North Carolina, and abroad in the Dominican Republic, Costa Rica and Far East. Costa has been a family operated business spanning three generations.

The Debtor is intimately familiar with Costa. Indeed, when the Debtor began operations in 2000, certain members of management and the owners consisted of former Costa employees who wanted to venture out on their own. Additionally, many of the members of management of the Debtor are related to members of management of Costa. As a result of the circumstances surrounding the Debtor's creation, relations between Costa and the Debtor have been adverse to non-existent on both business and personal levels, and mistrust and misunderstandings have lead to allegations of improper conduct and bad intent. As discussed below, notwithstanding the Debtor's familiarity with Costa, the Debtor never contacted Costa regarding the sale of its assets, despite representations of exhaustive marketing efforts.

**Debtor's Filing of Petition and Court's Entry of Bidding Procedures Order**

The Debtor filed its voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida on June 23, 2010 (the "Petition Date") (ECF #1). Although Costa was aware of the filing of the Debtor's bankruptcy petition, Costa has not actively monitored the status of the bankruptcy proceeding.

On January 7, 2011, the Debtor filed its Emergency Motion for Entry of (I) an Order (A) Authorizing and Approving Bidding Procedures for the Sale of Substantially All the Debtor's Assets; (B) Approving Form of Purchase Agreement, Including Break-Up Fee; (C) Scheduling An Auction and Final Hearing to Consider Approval of the Sale; (D) Approving Form and Manner of Notice of Bidding Procedures, Auction, and Sale Hearing and (II) An Order

Authorizing (A) Sale of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Bid Procedures Motion") (ECF # 204). The Court held a hearing on the Bid Procedures Motion on January 13, 2011 and entered the Bidding Procedures Order on January 14, 2011 (ECF # 224).

**Costa Attempts to Participate in the Bidding Process**

At the time the Bidding Procedures Order was entered, Costa was unaware that an auction of the Debtor's assets was to take place and was never contacted by the Debtor as a potential bidder.[3] Indeed, although the Debtor asserts in its Bid Procedures Motion that it, with the assistance of Bayshore Partners, LLC ("Bayshore"), conducted an extensive marketing process and contacted over 200 parties, Costa, the nursery business next door to the Debtor, did not become aware of the auction and bidding process until a creditor in this bankruptcy case showed Costa the Bidding Procedures Order shortly after its entry.

Upon learning of the bidding process and Auction, Costa, through its undersigned counsel, promptly contacted counsel for the Debtor to learn how it could become involved in the process and acquire the due diligence materials necessary to make an informed bid to purchase the Debtor's assets. The Debtor's professionals emphasized the need to meet the deadline to submit a Qualified Bid by February 4, 2011, as the Debtor's cash position could not sustain delays.

Before Costa could become involved in the process or receive any preliminary materials, Costa was informed that it would need to execute a confidentiality agreement (the "CA"). Costa received the CA on January 17, 2011 in the evening and returned the executed CA to the Debtor mid-day on January 18, 2011 (a copy of the Executed Confidentiality Agreement is attached

---

[3]    Presumably, the Debtor allegedly marketed to the community at-large, but not to Costa.

hereto as Exhibit "A"). It took the Debtor more than 24 hours after receiving the executed CA to provide Costa with the confidential information memorandum (the "CIM") that it was told to review before it could have access to the remainder of the due diligence materials located in a virtual data room. The delay seemed strange as the Debtor and its professionals had emphasized the need to hold the auction on February 7, 2011. Costa reviewed the CIM and then requested access to the rest of the due diligence materials and an opportunity to inspect the Debtor's assets. At that point, the Debtor explained that Costa needed to provide financials demonstrating its ability to close if its bid was successful at the Auction. Costa subsequently provided the Debtor and Bayshore with audited 2009 financial statements and an unaudited 2010 financial statement as the 2010 books of Costa had not been closed. The Debtor still was not forthcoming with access to the due diligence materials and providing a date for an inspection, and told Costa that its financials were insufficient and it would need to show access to approximately $15,000,000 in available funds.

Costa complied and delivered a proof of funds letter verifying that it had immediate access to funds in excess of $15,000,000. When the Debtor complained about the form of the letter, Costa immediately obtained another letter to satisfy any concerns. Although the conditions imposed by the Debtor were becoming more troublesome and the delays counterproductive to the Debtor's stated goal - - selling its assets to the highest and best bidder within a compressed time frame - - Costa continued to work through the process.

Upon providing the proof of funds letter on mid-day January 21, 2011, Costa believed that access to the due diligence materials in the virtual data room would be imminent because of the short time frame before the Auction. To date, Costa has not been provided access to diligence materials or an opportunity to inspect the Debtor's premises and inventory. Costa

believes that both BFN and the original stalking horse bidder, United Growers, LLC, a direct competitor of the Debtor, have conducted due diligence, visited the Debtor's facilities, and engaged in discussions with various members of the Debtor's management team, all described as permissible actions in the Debtor's Bid Procedures Motion. (ECF # 204 at para. 12).

On January 22, 2011, even prior to Costa's submission of the Costa Bid, Costa received a letter from the Debtor explaining that the Debtor was utilizing its discretion allegedly authorized by the Bidding Procedures Order to reject Costa as a "Qualified Bidder" at the Auction of the Debtor's assets. Not only is the letter perplexing to Costa given its reputation in the industry and financial wherewithal, but it appears to be an attempt to eliminate meaningful competition at the Auction in direct contradiction of the stated purpose of a § 363 sale, *i.e.*, to facilitate an effective and efficient sales process to achieve the highest and best offer for the assets of a debtor. Accordingly, on January 24, 2011, Costa's counsel sent the letter attached hereto as Exhibit "B" (the "Fiduciary Letter") to Debtor's counsel urging that the Debtor reconsider its decision to reject Costa as a Qualified Bidder in light of the Debtor's fiduciary obligation to maximize the value of the estate.

**<u>Debtor's Potential Conflicts of Interest</u>**

After Costa reviewed the CIM, its personnel began to review publicly available information regarding the Debtor's assets, including the unexpired leases the Debtor sought to assume and assign as part of the sale. Costa believed that some of the questions it had could be resolved with a short conversation with the Debtor's CFO, Guillermo Navarro. Costa's counsel requested that Debtor's counsel arrange for a conference to avoid wasting valuable time. Costa had questions regarding Ave Maria Nursery, LLC ("Ave Maria Nursery") and Oz Land, LLC ("Oz Land"), two of the lessors identified on Schedule G of the Debtor's Schedules (ECF # 90).

Among other concerns, the Debtor's lease with Ave Maria Nursery appeared to be significantly above market when compared to other similar leases negotiated by the Debtor, including the Oz Land lease. Because Costa was denied access to the virtual data room and the Debtor's CFO, it continued to review publicly available information. The chart below summarizes the information Costa has gathered to date:

| Name of Person or Entity | Address | Relationship to other parties |
|---|---|---|
| Ave Maria Nursery | *According to Florida Department of State:*<br><br>815 N. Homestead Blvd, #512 Homestead, FL 33030 (this is a UPS store address and the same as Oz Land's address below)<br><br>*According to April 27, 2009, Limited Liability Company Reinstatement Report:*<br><br>17800 S.W. 268 Street, Homestead, Florida (same as Debtor's address below)<br><br>*According to Debtor's Schedules:*<br><br>110 NE 19th Street Homestead, FL 33030 | Lessor of 40 acre land lease to Debtor. According to Debtor's Statement of Financial Affairs ("SOFA"), Ave Maria Nursery was paid $175,000 by the Debtor during the 90 days prior to the Petition Date. The Debtor's SOFA does not list Ave Maria Nursery as an insider or reveal payments made within the one year period prior to the Petition Date. |
| Oz Land | *According to Florida Department of State:*<br><br>815 N. Homestead Blvd, #512 Homestead, FL 33030 (this is a UPS store address and the same as Ave Maria Nursery's address above)<br><br>*According to Debtor's Schedules:*<br><br>9325 SW 98th Street Miami, FL 33176 (according to public records, the 9325 SW 98th Street property is owned by "Beatriz P Garcia Velez TR" and the 9350 SW 98th Street property referenced below is owned by "Beatriz Garcia Velez") | Lessor of 40 acre land lease to Debtor. According to Debtor's SOFA, Oz Land was paid $65,000 by the Debtor during the 90 days prior to the Petition Date. The Debtor's SOFA does not list Oz Land as an insider or reveal payments made within the one year period prior to the Petition Date.<br><br>According to Florida Department of State, the managing member of Oz Land is Beatriz Garcia Velez. Upon information and belief, Beatriz Garcia Velez was the maiden name of Beatriz Garces. |
| Beatriz Garces | *According to Debtor's Schedules:*<br><br>9350 SW 98th Street Miami, FL 33176 | Vice President and 29% shareholder of the Debtor, and managing member of Oz Land. |

| Jose Garces | *According to Debtor's Schedules:*<br><br>9350 SW 98th Street Miami, FL 33176 | President and 31% shareholder of the Debtor |
| Debtor | *According to Florida Department of State and Debtor's Schedules:*<br><br>17800 S.W. 268th Street Homestead, FL 33031 | Lessee of Ave Maria Nursery and Oz Land leases. |
| Richard L. Richards, Esq. | *According to Florida Department of State and Debtor's schedules:*<br><br>232 Andalusia Avenue, Suite 202, Coral Gables, FL 33134 | Listed with the Florida Department of State as the registered agent for both Ave Maria Nursery and Oz Land.<br><br>According to Debtor's SOFA, the firm of Richards & Associates was paid $84,083.58 by the Debtor during the 90 days prior to the Petition Date.<br><br>Additionally, by application dated July 27, 2010 (ECF # 99), the Debtor sought to retain Richards & Associates as special litigation counsel to the Debtor. The application made no reference to Ave Maria Nursery and Oz Land. |

The Debtor's Motion for Entry of an Order Approving Assumption and Assignment of Unexpired Nonresidential Real Property Leases, or In the Alternative, Further Extending Time Within Which to Assume and Reject Unexpired Nonresidential Real Property Leases (ECF # 227) does not disclose whether the assumption of the Ave Maria Nursery and Oz Land leases will benefit any insiders of the Debtor. Further, Costa has not been able to locate any disclosure or clarification regarding insider connections with these leases in the Debtor's Schedules, SOFA or elsewhere in the Court record. At a minimum, this should call into question the Debtor's ability to act as an unbiased fiduciary and exclude qualified bidders from the bidding and auction process based upon the Debtor's purported exercise of its business judgment.

**Submission of the Costa Bid**

As no response was provided by the Debtor to the Fiduciary Letter, on January 25, 2011, in compliance with the Bidding Procedures Order and well in advance of the February 4, 2011 bid deadline, Costa submitted the Costa Bid to Debtor's counsel and Bayshore. Copies of the Costa Bid and documents delivered in connection therewith are attached hereto as Exhibit "C". As evidenced by the redline of Costa's Competing Agreement marked against BFN's Agreement, the Costa Bid is on substantially similar terms and conditions as the BFN Bid. Notably, however, the consideration provided under the Costa Bid totals $15,687,000, which is **$900,000** more than the Proposed Consideration required under the Bidding Procedures to constitute a Qualified Bid, increases the net recovery of the estate by **$1,000,000**, and **doubles** the recovery for unsecured trade creditors from $500,000 to $1,000,000.

Further, Costa has satisfied each of the requirements of Sections 3(b)(i) – 3(b)(iv) of the Bidding Procedures. As discussed above, Costa previously delivered to the Debtor a confidentiality agreement, financial statements and proof of funds. With respect to evidence of internal authorization and approval required by Section 3(b)(iii) of the Bidding Procedures, the Costa Bid included an executed written consent of the sole member of Costa with respect to the Competing Agreement and transactions contemplated thereby. Finally, with respect to the Deposit required under Section 3(b)(iv), Costa stated that it would immediately provide the Debtor with such Deposit (in immediately available funds) upon the earlier of (1) receipt of written confirmation from the Debtor (after consultation with the Committee and Bank of America) that Costa is otherwise a Qualified Bidder and the Costa Bid is otherwise a Qualified Bid or (2) noon on February 4, 2011.

The Costa Bid is also in full compliance with Section 5 of the Bidding Procedures:

- The Competing Agreement is an executed definitive asset purchase agreement for the purchase of all of the Purchased Assets and assumption of the Assumed Liabilities, on terms and conditions substantially similar to and no less economically favorable to the Debtor than those contained in the BFN Agreement;

- The Costa Bid provides for total consideration of $15,687,000, which exceeds the consideration under the BFN Bid by $1.3 million;

- The Costa Bid is not conditioned on the ability of Costa to obtain financing or the outcome of unperformed diligence by Costa after February 3, 2011 or any other contingency not provided for in the BFN Bid;

- The Costa Bid was submitted well in advance of the Initial Bid Deadline;

- Although the exhibits and schedules to the BFN Agreement have not yet been filed or otherwise provided to Costa, absent agreement of the parties or further order of the Court, Costa will (i) request assumption by the Debtor and assignment to it of the same executory contracts and unexpired leases that would be assumed and assigned to BFN in connection with the BFN Agreement and (ii) assume the same liabilities as those assumed under the BFN Agreement; and

- There are no affiliates or insiders of the Debtor involved in the Costa Bid.

Finally, as stated in the Fiduciary Letter, Costa has explicitly agreed that it will not contact any employees, vendors or customers of the Debtor in connection with the bidding and auction process.

After submitting the Costa Bid on January 25, 2011, Costa attempted to engage in good faith negotiations with the Debtor concerning the terms and conditions of a one-day, on site inventory and equipment inspection on Sunday, January 30, 2011, as evidenced by the cumulative e-mail chain attached hereto as Exhibit "D". This requested inspection is critical to Costa's ability to meaningfully participate in the Auction and potentially increase its bid. Costa believed that substantially all points regarding the inspection had been negotiated as of January 26, 2011, subject to a few remaining questions and clarifications. See Exhibit "D". On January 27, 2011, despite Costa's counsel's repeated attempts to set up a call with Debtor's counsel to

resolve these issues, Debtor's counsel continued to delay the matter.   Copies of the email cumulative email chains evidencing such delay are attached hereto as Exhibit "E".   Finally, on the evening of Thursday, January 27, 2011, the Debtor advised the undersigned that the Debtor would not provide Costa with access to the premises or any information.

There is simply no legitimate basis to support the Debtor's refusal to treat Costa as a Qualified Bidder and the Costa Bid as a Qualified Bid, or to provide Costa with the same level of diligence and inspection rights afforded to other potential bidders.   Costa believes that the Debtor is unfairly trying to block Costa from participating in the bidding process and Auction at the expense of its creditors and its estate.   The Court should not countenance such actions, especially where Costa has submitted a Qualified Bid that exceeds the BFN Bid by $1.3 million and, pending the outcome of further diligence and inspection, may be prepared to increase its bid further.   Costa has complied with the Bidding Procedures and should be allowed to participate fully in the bidding process and Auction as a Qualified Bidder.

## DISCUSSION

**The Court Should Compel the Debtor to Comply With the Bidding Procedures and Provide Costa Access to Due Diligence Materials, Permit Inspection of Debtor's Assets and Allow Costa to Participate in the Bidding Process and Auction**

The Debtor has unreasonably limited Costa from acquiring access to the due diligence materials provided for in the Bidding Procedures Order, prevented Costa from inspecting the Debtor's assets and intends to preclude Costa from participating in the bidding process and Auction.   Costa believes that the Debtor's actions are without merit and that the Debtor should be compelled by this Court to, among other things, comply with the Bidding Procedures Order and allow Costa to participate as a Qualified Bidder in the bidding process and Auction. The Bidding Procedures state in pertinent part:

> 2.   _Due Diligence_. Upon receipt by Infante, Zumpano, Hudson & Miloch ("Debtor's Counsel") of (i) an executed confidentiality agreement ("Confidentiality Agreement"); (ii) a completed and executed bidder information sheet (to be provided upon request), and (iii) evidence satisfactory to the Debtor that the potential bidder is reasonably likely to be able to consummate a purchase of the Purchased Assets, and if each of the materials described in subclauses (i), (ii), and (iii) are in form and substance satisfactory to the Debtor in its sole discretion, a potential bidder **_shall be provided_** with additional information regarding the Purchased Assets, the Debtor's operations and financial condition, and be afforded the opportunity to inspect the Purchased Assets. In addition, **_all reasonable efforts will be made_** to provide a potential bidder, who has satisfied the conditions of this Section 2, with such information as such potential bidder may determine is necessary or relevant to the formulation of its bid.

_See_ Exhibit "A" to Bidding Procedures Order (emphasis added). Costa has complied with each of the subclauses and, therefore, the Bidding Procedures mandate that the Debtor shall provide the additional due diligence.[4] Furthermore, the actions of the Debtor have been anything but reasonable in providing Costa with information necessary to assist Costa in developing and formulating its bid. The Debtor has violated the provisions of the Bidding Procedures Order by failing to provide Costa with the required due diligence and access to inspect the "Purchased Assets."

Moreover, the purpose of the Bidding Procedures and the Court-approved auction and sale process is to ensure that the Debtor's assets are appropriately marketed and that the Debtor receives the highest and best price. (See Bid Procedures Motion at para. 15). Courts typically encourage open, robust and competitive bidding at a § 363 sale in order to maximize the sale price of the assets to be sold. Courts have held that bid procedures for the sale of a debtor's business may become unfair and unreasonable when the bid procedures provide too much discretion to the debtors in the auction process. _See In re American Safety Razor, LLC, et al._, No. 10-12351 (Bankr. D. Del. Sept. 30, 2010) (requiring debtor to provide due diligence

---

[4]   Costa, through its counsel, requested the bidder information sheet which is only available upon request, but Debtor has failed to provide it despite such request. Presumably, as the Debtor is very familiar with Costa, the information to be provided on this form (although Costa has never seen it) is already known to the Debtor.

materials to bidder because debtor abused its discretion in unfairly and unreasonably withholding the materials from potential bidder); *see also In re John Peterson Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009) (noting that unless the bidding process remains fair and equitable, competitors will refrain from the type of full participation that is needed to assure bids for the highest reasonable value).

Here the Debtor has chosen to ignore and disregard the clear language of the Bidding Procedures that, if followed, would ensure Costa's participation as a Qualified Bidder. Moreover, the Debtor's rejection of the Costa Bid is in breach of its fiduciary obligation to maximize its estate for the benefit of its creditors. *See, e.g., In re Reliant Energy Channelview LP*, 594 F.3d 200, 210 (3d Cir. 2010) (stating that "debtors-in-possession have a fiduciary duty to maximize the value of the estate"); *In re Northwest Airlines Corp.*, 349 B.R. 338, 369 (S.D.N.Y. 2006) ("The debtor-in-possession is a fiduciary, obligated to maximize the value of the estate, treat all parties to the case fairly, and protect and conserve the debtor's property." (collecting cases)).

Further, under the facts and circumstances of this case, Costa clearly has standing to challenge the fairness and structure of the bidding process and Auction.  As explained in *In re Harwald*,

> Courts ... properly entertain suits challenging the equity of a bankruptcy sale transaction, on the assumption that sales tinged by fraud, mistake or unfairness would generally result in an accepted bid below that which might have been expected in a fair, free market situation.  Thus, when an unsuccessful bidder attacks a bankruptcy sale on equitable grounds related to the intrinsic structure of the sale, he brings himself within the zone of interests which the Bankruptcy Act seeks to protect and to regulate.

497 F.2d 443, 444-45 (7th Cir. 1974) (internal citations omitted); *see also In re Colony Hill Assocs.*, 111 F.3d 269, 273-74 (2d Cir. 1997) (finding that unsuccessful bidder had standing to challenge the intrinsic fairness of bankruptcy sale).

The Debtor's rejection of Costa from the bidding process and Auction will have a chilling effect on bidding and will result in the Debtor not receiving the best and highest offer for the purchase of its assets.    As such, Costa respectfully submits that Court intervention is necessary to enforce the terms of the Bidding Procedures Order and to ensure that the bidding process and Auction are conducted in a manner that will maximize the value of the Debtor's estate.

## CONCLUSION

For the foregoing reasons, Costa Farms, LLC respectfully requests that this Court enter an order (A) compelling the Debtor (1) to comply with the Bidding Procedures Order and allow Costa to participate in the bidding process and Auction as a Qualified Bidder, (2) to provide Costa with access to the due diligence materials in the virtual data room and to permit Costa to inspect the Debtor's assets on or before Sunday, January 30, 2011, and (3) to disclose all conflicts of interest of the Debtor's management and principals; and (B) granting any further relief as the Court deems appropriate.

Dated: January 27, 2011                                 Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Phone:  (305) 372-1800
Fax: (305) 372-3508
Email:    clc@kttlaw.com

By:    Corali Lopez-Castro
        Corali Lopez-Castro
        Florida Bar No. 863830

and

WHITE & CASE LLP

Thomas E Lauria
Florida Bar No. 044083
Frank L. Eaton
Florida Bar No. 553522
Wachovia Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
tlauria@whitecase.com
featon@whitecase.com


*Counsel for Costa Farms, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on the parties listed on the Master Service List dated January 20, 2011 maintained in this bankruptcy case by this Court's CM/ECF system this 27th day of January, 2011 and/or via U.S. Mail on the 28th day of January 2011.

By:    Corali Lopez-Castro
            Corali Lopez-Castro

MASTER SERVICE LIST OF JANUARY 20, 2011
First Foliage, L.C., Chapter 11 Debtor
Case No. 10-27532-BKC-LMI

First Foliage, L.C.
Attn: Jose Garces
17800 Southwest 268th Street
Homestead, FL 33031

**VIA EMAIL ONLY:**
luis.salazar@izhmlaw.com
Luis Salazar, Esq.
Infante, Zumpano, Hudson & Miloch, LLC
500 South Dixie Highway, Suite 302
Coral Gables, FL 33146
*Counsel for First Foliage, L.C.*

**VIA EMAIL ONLY:**
jguso@bergersingerman.com
Jordi Guso, Esq.
BergerSingerman, P.A.
200 South Biscayne Boulevard, 10th Floor
Miami, FL 33131
*Counsel for the Official Committee
of Unsecured Creditors*

**VIA EMAIL ONLY:** hberlin@bergersingerman.com
Howard J. Berlin, Esq.
BergerSingerman, P.A.
200 South Biscayne Boulevard, 10th Floor
Miami, FL 33131
*Counsel for the Official Committee
of Unsecured Creditors*

**VIA EMAIL ONLY:** dgaller@bergersingerman.com
Debi Evans Galler, Esq.
BergerSingerman, P.A.
200 South Biscayne Boulevard, 10th Floor
Miami, FL 33131
*Counsel for the Official Committee
of Unsecured Creditors*

**VIA EMAIL ONLY:** jbast@bastamron.com
Jeffrey P. Bast, Esq.
Bast Amron LLP
SunTrust International Center
One Southeast Third Avenue, Suite 1440
Miami, FL 33131
*Counsel for Helena Chemical Company*

**VIA EMAIL ONLY:** azaron@hunton.com
Andrew D. Zaron, Esq.
Hunton & Williams LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
*Local Counsel for Bank of America, N.A.*

**VIA EMAIL ONLY:** andrew.wool@kattenlaw.com
Andrew L. Wool, Esq.
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
*Counsel for Bank of America, N.A.*

**VIA EMAIL ONLY:** john.sieger@kattenlaw.com
John P. Sieger, Esq.
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
*Counsel for Bank of America, N.A.*

**VIA EMAIL ONLY:** daniel.polatsek@kattenlaw.com
Daniel J. Polatsek, Esq.
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
*Counsel for Bank of America, N.A.*

**VIA EMAIL ONLY:**
jalper@yoss.com
Joshua B. Alper, Esq.
Yoss LLP
350 East Las Olas Boulevard, Suite 1700
Ft. Lauderdale, FL 33301
*Counsel for GMAC Commercial Finance LLC*

**VIA EMAIL ONLY:** ctatelbaum@yoss.com
Charles M. Tatelbaum, Esq.
Yoss LLP
350 East Las Olas Boulevard, Suite 1700
Ft. Lauderdale, FL 33301
*Counsel for GMAC Commercial Finance LLC*

**MASTER SERVICE LIST OF JANUARY 20, 11**
First Foliage, L.C., Chapter 11 Debtor
Case No. 10-27532-BKC-LMI

**VIA REGULAR U.S. MAIL AND EMAIL:**
USTPRegion21.MM.ECF@usdoj.gov
Office of the U.S. Trustee
Attn: Johanna P. Armengol, Esq.
51 SW First Avenue, Room 1204
Miami, FL 33130

**VIA REGULAR U.S. MAIL:**
Orange County Tax Collector
P.O. Box 2551
200 South Orange Avenue, Suite 1500
Orlando, FL 32802-2551

**VIA REGULAR U.S. MAIL:**
Miami-Dade County Tax Collector
Paralegal Unit
140 West Flagler Street, 14th Floor
Miami, FL 33130

**VIA EMAIL ONLY:**
cao.bkc@miamidade.gov
Melinda S. Thornton, Esq.
Assistant County Attorney
County Attorney's Office
2810 Stephen P. Clark Center
111 N.W. First Street
Miami, FL 33128-1993

**VIA REGULAR U.S. MAIL:**
Internal Revenue Service
Department of Treasury
227 N. Borough Street
Tallahassee, FL 32301

**VIA REGULAR U.S. MAIL:**
State of Florida
Department of Revenue
Bankruptcy Section
P.O. Box 6668
Tallahassee, FL 32314-6668

**VIA REGULAR U.S. MAIL:**
United States Department of Agriculture Risk
Management Agency
USDA/RMA/Stop 0801
Room 6092 South
1400 Independence Avenue, SW
Washington, DC 20250

**VIA EMAIL ONLY:** dab-hhb@cfl.rr.com
David A. Burt, Esq.
Hawkins, Hawkins & Burt, LLP
501 South Ridgewood Avenue
Daytona Beach, FL 32114

**VIA EMAIL ONLY:** jeffrey.kucera@klgates.com
Jeffrey T. Kucera, Esq.
K&L GATES LLP
Wachovia Financial Center, 39th Floor
200 South Biscayne Boulevard
Miami, FL 33131
*Counsel for Rural Community Insurance*
*Agency, Inc. d/b/a Rural Community Insurance*
*Services*

**VIA EMAIL ONLY:** thoffman@rma.usda.gov
Tim Hoffman, Director of
Risk Management Agency
Federal Crop Insurance Corporation
6501 Beacon Drive, Room G28C
Kansas City, MO

**VIA REGULAR U.S. MAIL AND EMAIL:**
cfonc@rma.usda.gov
Director of Eastern Regional Compliance
4405 Bland Road, Suite 165
Raleigh, NC 27609

**VIA REGULAR U.S. MAIL**
**AND FAX: (301) 208-1855**
Daniel N. Rosenstein, Esq.
Levin & Rosenstein, P.C.
1395 Piccard Drive, Suite 110
Rockville, MD 20850

**MASTER SERVICE LIST OF JANUARY 20, 11**
First Foliage, L.C., Chapter 11 Debtor
Case No. 10-27532-BKC-LMI

**VIA EMAIL ONLY:** brett.marks@akerman.com
David B. Marks, Esq.
Akerman Senterfitt
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
*Counsel for Kerry's Nursery, Inc.*

**VIA EMAIL ONLY:**
james.fierberg@akerman.com
James Fierberg, Esq.
Akerman Senterfitt
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
*Counsel for Kerry's Nursery, Inc.*

**VIA REGULAR U.S. MAIL:**
Florida Department of Revenue
c/o Agency Clerk
501 S. Calhoun Street
Room 201, Carlton Building
Tallahassee, FL 32399

**VIA REGULAR U.S. MAIL:**
Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

**VIA REGULAR U.S. MAIL:**
Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114

**VIA REGULAR U.S. MAIL:**
Internal Revenue Service
Special Procedures – Insolvency
7850 S.W. Sixth Court
Plantation, FL 33324

**VIA REGULAR U.S. MAIL:**
Special Assistant U.S. Attorney
P.O. Box 9, Stop 8000
51 S.W. First Avenue, Room 1114
Miami, FL 33130

**VIA REGULAR U.S. MAIL:**
Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Suite 340
Plantation, FL 33324-3906

**VIA REGULAR U.S. MAIL:**
The Honorable Eric H. Holder, Jr.
Attorney General of the United States
950 Pennsylvania Avenue, N.W. Room 4400
Washington, DC 20530-0001

**VIA REGULAR U.S. MAIL:**
The Honorable Jeffrey H. Sloman
Acting U.S. Attorney
99 N.E. Fourth Street
Miami, FL 33132

**COMMITTEE OF CREDITORS HOLDING**
**UNSECURED CLAIMS**

**VIA EMAIL ONLY:**
artphelps@bwicompanies.com
Art Phelps
BWI Companies, Inc.
P. O. Box 990
Nash, TX 75569

**VIA EMAIL ONLY:** joe@foremostco.com
Joseph C. Roberts, President
ForemostCo, Inc.
8457 NW 66 Street
Miami, FL 33166

**VIA EMAIL ONLY:** bschoppman@harrells.com
Bill Schoppman, Credit Supervisor
Harrell's
720 Kraft Road
Lakeland, FL 33815

**MASTER SERVICE LIST OF JANUARY 20, 11**
First Foliage, L.C., Chapter 11 Debtor
Case No. 10-27532-BKC-LMI

**VIA EMAIL ONLY:**    kherndon@kerrys.com
                      nharter@kerrys.com
Kerry L. Herndon
Kerry's Nursery, Inc.
d/b/a Twyford International, Inc.
21840 SW 258 Street
Homestead, FL 33031

**VIA EMAIL ONLY:**  valroyliners@att.net
Eduardo Vallin, President
Valroy Liners, Inc.
P.O. Box 343238
Florida City, FL 33034

**VIA EMAIL ONLY:**  msmith@glassratner.com
Margaret J. Smith
GlassRatner Advisory & Capital Group, LLC
799 Brickell Plaza, Suite 701
Miami, FL 33131

**VIA EMAIL ONLY:**  rrichards@richpa.net
Richard L. Richards, Esq.
Richards & Associates
232 Andalusia Avenue, Suite 202
Coral Gables, FL 33134

**VIA EMAIL ONLY:**
lroesch@whitecase.com
kmcgill@miami.whitecase.com
Lane E. Roesch, Esq.
Kevin M. McGill, Esq.
White & Case LLP
Wachovia Financial Center
Suite 4900
200 South Biscayne Boulevard
Miami, FL 33131-2352
*Counsel for United Growers, LLC*

**VIA EMAIL ONLY:**
szuckerman@farlieturner.com
Steve Zuckerman
Bayshore Partners, LLC
401 East Las Olas Blvd, Suite 1160
Ft. Lauderdale, FL 33301

**VIA EMAIL ONLY:**
ajillson@hunton.com
jhale@hunton.com
ccarlson@hunton.com
Andrew E. Jillson, Esq.
Jarrett L. Hale, Esq.
Curtis G. Carlson, Esq.
Hunton & Williams
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
*Counsel for BFN Growers, LLC*

**VIA EMAIL ONLY:**
matthew.arenson@kirkland.com
Matthew S. Arenson, Esq.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

**VIA EMAIL ONLY:**
jeffrey.fine@kirkland.com
Jeffrey A. Fine, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654

**VIA EMAIL ONLY:**
CLC@kttlaw.com
Corali Lopez-Castro, Esq.
Kozyak Tropin & Throckmorton
2525 Ponce De Leon, 9th Floor
Miami, FL 33134

**VIA EMAIL ONLY:**
jk@kttlaw.com
John W. Kozyak, Esq.
Kozyak Tropin & Throckmorton
2525 Ponce de Leon, 9th Floor
Miami, FL 33134